UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE T. GORDON,<br><br>      Plaintiff,<br><br>      v.<br><br>RAND BEERS,<br><br>      Defendant. | Civil Action No. 09-2211 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Jacqueline Gordon, an employee of the Federal Emergency Management Agency, filed one discrimination complaint with the Equal Employment Opportunity Commission in September 2004 and another in May 2007. Both times, the Commission rejected her claims. In 2009, she filed this employment-discrimination suit. Suing under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Gordon alleged that her EEOC complaints had triggered numerous incidents of retaliatory conduct, as well as behavior among her co-workers that created a hostile work environment. The Court previously dismissed most of Plaintiff's claims on the ground that they were untimely. See Gordon v. Napolitano (Gordon I), 786 F. Supp. 2d 82, 86-87 (D.D.C. 2001). The Court, however, did decide that it would be premature to dismiss the three remaining claims before discovery. Id. Discovery now having closed, Defendant Rand Beers, Acting Secretary of the Department of Homeland Security, moves to dismiss or, in the alternative, for summary judgment on these three surviving claims. Concluding that Plaintiff's evidence is insufficient to create a material dispute of fact, the Court will treat Defendant's filing as a motion for summary judgment and will grant it.

1

**I.     Background**

The facts in this case are largely set forth in Gordon I, 786 F. Supp. 2d at 83. To briefly recap, and taking the facts in the light most favorable to Plaintiff, Gordon, a black woman over 40 years of age, was at all relevant times employed by the Federal Emergency Management Agency, a component of the Department of Homeland Security. See Def. First Mot. To Dismiss, Exh. 15 (First Administrative Deposition of Jacqueline Gordon) at 6:6-6:22. In September 2004, Gordon filed a complaint with the EEOC alleging discrimination based on gender, race, color, and age, as well as reprisal for prior protected activity. See Am. Compl., ¶ 25. The EEOC found in favor of the Agency. See First Mot., Exh. 9 (First EEOC Decision) at 13.

Plaintiff believes that her EEOC complaint triggered retaliatory conduct, as well as treatment by her colleagues and supervisors that constituted a hostile work environment. This belief prompted Gordon to contact the EEOC again, in January of 2007, and to file a second complaint before that body in May of the same year. See First Mot., Exh. 17 (Second EEOC Decision) at 2. Reaction to this later complaint, she alleges, also contributed to her hostile work environment. The EEOC again resolved the matter in favor of DHS, see id. at 15, and Plaintiff received a Notice of Right To Sue. See Gordon I, 786 F. Supp. 2d at 83. She then brought an action against the Agency in this Court in November 2009, setting forth one count of retaliation and one count alleging a hostile work environment. See Am. Compl., ¶¶ 34-41. The Complaint alleged a large number of incidents of retaliation, see id, ¶¶ 7-21, 36-37, and it claimed that those incidents, when taken together, also created a hostile work environment. See id., ¶¶ 39-41.

Then-Secretary Janet Napolitano sought to dismiss the suit in its entirety under Rule 12(b) of the Federal Rules of Civil Procedure, claiming that Plaintiff had failed to exhaust her administrative remedies or state a claim upon which relief could be granted. See First Mot. at 1.

In the alternative, the Secretary argued, the suit should be decided in her favor on summary judgment under Rule 56. Id. After determining that "each incident was of a different kind from the others" and occurred "over the course of several years," Gordon I, 786 F. Supp. 2d at 84, this Court dismissed almost all of Plaintiff's claimed incidents of retaliation for lack of exhaustion. Id. at 87. The Court deemed it premature, however, to dismiss the two remaining retaliation incidents and the hostile-work-environment claim prior to discovery. Id. at 86-87. Those surviving claims allege: (1) retaliation in connection with an overtime dispute that occurred on December 19, 2006; (2) mistreatment by a FEMA contractor, Eddie Cherriss, on February 6, 2007; and (3) a litany of incidents of harassment that allegedly constitute a hostile work environment. Id. at 85 (citing Am. Compl., ¶¶ 16(b), 16(e), 17).[1]

With discovery now complete, Defendant has renewed his Motion To Dismiss or, in the Alternative, for Summary Judgment on the remaining claims. The Court is unsure why Defendant has labeled his pleading a Motion To Dismiss; as the Motion draws on evidence outside of the Complaint and associated documents, the Court must treat it solely as a Motion for Summary Judgment. See Fed. R. Civ. P. 10(c).

**II.    Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

---

[1] The Court notes that although Gordon I mistakenly stated that Paragraph 16(b) of Gordon's Amended Complaint described the December 19, 2006, overtime dispute, see 786 F. Supp. 2d at 85 – the reference should have been to Paragraph 16(c) because Paragraph 16(b) had to do with an earlier overtime dispute that Plaintiff failed to exhaust – the parties address the correct events in their briefs.

3

895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The nonmovant is required to provide evidence that would permit a reasonable jury to find in her favor. Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Liberty Lobby, 477 U.S. at 249-50.

**III. Analysis**

Although the Court has already dismissed most of Gordon's claims, pieces of two counts remain from her Amended Complaint. Count I alleges retaliation, and Count II claims that Gordon was subjected to a hostile work environment. See Am. Compl., ¶¶ 34-41.

A. Retaliation

Title VII prohibits an employer from retaliating against an employee "because [the employee] has opposed any practice made an unlawful employment practice" under the statute. 42 U.S.C. § 2000e-3(a). In cases like this one, in which there is no direct evidence of retaliation, the Court must begin with the familiar three-part burden-shifting framework set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). See McGrath v. Clinton, 666 F.3d 1377, 1383 (D.C. Cir. 2012). Under this framework, the plaintiff has the initial burden of establishing by a preponderance of the evidence a *prima facie* case of retaliation.

To establish such a *prima facie* case, "a plaintiff must show: (1) that he opposed a practice made unlawful by [statute]; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action because the employee opposed the practice." Id. at 1380 (internal quotation marks omitted). In cases where the defendant offers a legitimate, non-retaliatory reason for its decision, the court "need not – and should not – decide whether the plaintiff actually made out a *prima facie* case under McDonnell Douglas." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, it simply looks at whether the employee has produced sufficient evidence for a reasonable jury to conclude that the asserted non-retaliatory justification for the action is a pretext for retaliation. Guajacq v. EDF, Inc., 601 F.3d 565, 577 (D.C. Cir. 2010). In this case, however, Defendant does not offer a reason for any action or decision; instead, it relies on Plaintiff's failure to establish a *prima facie* case of retaliation. In such circumstances, there is no Brady pretext question to reach. See

5

Dudley v. Washington Metro. Area Transit Auth., 924 F. Supp. 2d 141, 181 (D.D.C. 2013) (because Defendant "attack[ed] Plaintiff's *prima facie* case directly" – here, whether adverse action occurred and whether it was reasonably proximate to alleged retaliation – court did not need to consider question of pretext).

Just two alleged acts of retaliation by FEMA remain after Gordon I. First, Gordon mentions a dispute about overtime that she claims occurred in retaliation for her 2004 EEOC Complaint. See Am. Compl., ¶ 16. Second, she alleges that Eddie Cherris, a FEMA contractor, approached her at her desk and threatened her. This treatment, she alleges, was similarly retaliatory. See id., ¶¶ 16(e), 17. In moving for summary judgment, Defendant asserts that Gordon cannot establish a *prima facie* claim for retaliation because neither act constitutes an adverse action and neither was motivated by the Agency's desire to retaliate against her for her protected activity. See Def. Renewed Mot. at 12-14.

As a preliminary matter, there is no dispute that Gordon's 2004 EEOC complaint satisfies the first prong of the test for a *prima facie* case of retaliation under Title VII – namely, that the plaintiff must have engaged in protected activity. The 2004 complaint alleged that Gordon's supervisors had discriminated against her on the basis of age and race, both of which are illegal under Title VII. Whether Gordon is entitled to a remedy on this count, then, depends on whether FEMA took any materially adverse action against her because she opposed those alleged illegal acts.

   1. *Overtime Dispute*

The Court will begin with Gordon's argument about the December 19, 2006, overtime dispute. Plaintiff makes two related allegations with respect to those events: first, that Michael White, then her acting supervisor, threatened her into approving a co-worker's improper

6

overtime request, see Am. Compl., ¶ 16(c), and second, that Gordon's own proper overtime request was denied. See id., ¶ 10(c); see also Def. First Mot. To Dismiss, Exh. 16 (Second Administrative Deposition of Jacqueline Gordon) at 20:22. To rise to the level of a materially adverse employment action, an employer's behavior must be more disruptive than a mere inconvenience. See Forkkio v. Tanoue, 131 F. Supp. 2d 36, 40 (D.D.C. 2001). In considering retaliation claims, courts look "beyond workplace-related or employment-related retaliatory acts and harm" to any act that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006).

A denial of overtime may well qualify as an adverse action because it is likely to have just such an effect. See Diggs v. Potter, 700 F. Supp. 2d 20, 43 (D.D.C. 2010) (denial of request for sick leave "may well constitute an adverse or materially adverse action"). Unfortunately for Plaintiff, the record reveals that her own overtime denial occurred in 2004, see Second Gordon Admin. Depo. at 20:22, falling well outside of the 45-day EEOC filing window, and is thus unexhausted. See Gordon I, 786 F. Supp. 2d at 85 (finding that alleged acts before December 11, 2006, were unexhausted). As a result, that incident cannot be the basis for the retaliation claim Plaintiff sets forth here and should have been dismissed in the earlier Opinion.

The White incident, conversely, was properly exhausted since it occurred on December 19, 2006. See id. Forcing an employee to grant overtime to someone else, however, even if charitably viewed as a one-time removal of Gordon's official duties, cannot constitute an adverse action because "changes in assignments or work-related duties do not ordinarily constitute adverse employment actions if unaccompanied by a decrease in salary or work hour changes."

7

Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1557 (D.C. Cir. 1997). With no adverse action to speak of, Plaintiff's claim with respect to the overtime incident cannot proceed.

2. *Incident with Cherris*

Although it is plausible that Plaintiff could make out a case that Cherris's behavior toward her, if directed by Defendant or the Agency, did constitute an adverse action, this claim suffers from other fatal defects. Defendant argues first that there is no causal nexus between Cherris's actions and Gordon's protected activity. Before addressing that point, the Court will discuss a more fundamental flaw: an employer cannot be liable for retaliation if the employer itself is in no way responsible for the alleged adverse action.

In the hostile-work-environment context, an employer may be held liable to an employee for misconduct by her co-worker only if the employer is legally responsible for the actions of the individual who perpetrated the adverse action. See Davis v. Coastal International Security, Inc., 275 F.3d 1119, 1123 (D.C. Cir. 2002) (noting that Title VII liability requires "the existence of respondeat superior liability"). In other words, a plaintiff must prove that the employer knew of the harassment and failed to take prompt and appropriate remedial action. See Curry v. District of Columbia, 195 F.3d 654, 660 (D.C. Cir. 1999); Coles v. Kelly Servs., 105 F. App'x 275, 276 (D.C. Cir. 2004). The Sixth Circuit has held that this principle applies equally to retaliation claims. See Hawkins v. Anheuser–Busch, Inc., 517 F.3d 321, 347 (6th Cir. 2008) (employer is liable for co-worker's actions only where supervisors have knowledge of coworker's behavior and condone, tolerate, or encourage those acts).

The Court is persuaded that the Sixth Circuit's approach is the correct one. When an employer acts promptly to remediate an employee's retaliatory conduct, it serves Title VII's goal of deterring employer conduct – or, indeed, an employer's endorsement of an employee's

8

conduct – that would dissuade employees from bringing meritorious complaints in the future. Here, it is undisputed that Plaintiff's supervisor, Joyce Ard, not only refused to tolerate Cherris's actions, but in fact supported Plaintiff's complaint against him and ultimately had him terminated. See Mot., Exh. 13 (Administrative Deposition of Joyce Ard) at 18:2-25, 19:1-17. Plaintiff, tellingly, testified in her EEOC deposition that Ard "did the very best she could" in the situation. See Second EEOC Decision at 14; First Gordon Depo. at 51:9-10. Given Ard's efforts, it would beggar belief to suggest that the contractor's harassment in this case could reasonably discourage an employee like Gordon from speaking out against management in the future. On the contrary, the message is that harassers or retaliators must beware.

What is more, even were the Court to find that Defendant could be held responsible for Cherris's actions, Plaintiff has still failed to establish the requisite causal nexus between her protected activity and those actions. Indeed, she has never offered any evidence that Cherris's behavior was a reaction to – or, indeed, had anything at all to do with – her 2004 EEOC Complaint. To establish causation, "the employee must proffer evidence from which a reasonable jury could infer the employer's retaliatory intent." McGrath, 666 F.3d at 1383 (citing Montgomery v. Chao, 546 F.3d 703, 706 (D.C. Cir. 2008)). Although "such evidence may be direct, circumstantial, or both," McGrath, 666 F.3d at 1383, and "there is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case . . . that could withstand a summary judgment motion," Desmond v. Mukasey, 530 F.3d 944, 964 (D.C. Cir. 2008), it is not enough for Plaintiff simply to testify that her employer had a retaliatory motive. Indeed, "[a]lthough, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule." Greene v. Dalton, 164 F.3d 671, 675

9

(D.C. Cir. 1999); see also Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993) (discrimination plaintiff asserting superior qualifications "must support his allegations . . . with facts in the record; a mere unsubstantiated allegation of superior qualifications creates no genuine issue of fact and will not withstand summary judgment"). The problem for Plaintiff, then, is not that she is the one asserting that she was retaliated against, but that "[a]bsent supporting facts – and [she has] provided none – a jury would be in no position to assess [her] claim" that the Agency had in fact retaliated against her. Greene, 164 F.3d at 675. Because Plaintiff's claim that Cherris was, somehow, acting on behalf of the Agency and in retaliation for her EEOC Complaint before he was fired for his conduct "rests entirely upon a conclusory representation," Greene, 164 F.3d at 675, the Court must dismiss it.

Plaintiff has failed to make out a *prima facie* case of retaliation. The Court will, accordingly, grant Defendant's Motion on Count I.

### B. Hostile Work Environment

Plaintiff also alleges that she was subjected to a hostile work environment. In particular, she argues in her Opposition:

> [T]he totality of [the harassment's] frequency and severity . . . were sufficient to create an ongoing hostile work environment for Plaintiff, which . . . is on account of her gender, race, color, age, and reprisal. Note, in particular, that multiple incidents involved threatening physical confrontations with Agency staffers, and that the persistent harassments, by their nature, and due to their resulting medically-related leaves, were intended to, and did, substantially interfere with Plaintiff's ability to do her job.

Pl. Opp. at 10. Defendant responds that there is no evidence that the complained-of conduct was sufficiently egregious to support Gordon's claim or, indeed, that the events even happened as Plaintiff claims they did. See Reply at 6-7. Although the Court must refrain from weighing the credibility of the evidence at this stage, see Liberty Lobby, 477 U.S. at 255, it agrees that the

limited facts on the record, even as Gordon describes them, cannot support a hostile-work-environment claim.

To establish such a claim, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question but nonetheless failed to either take steps to prevent it or afford the plaintiff prompt remedial action. Kelley v. Billington, 370 F. Supp. 2d 151, 156 (D.D.C. 2005) (citing Jones v. Billington, 12 F. Supp. 2d 1, 11 (D.D.C. 1997), aff'd, 1998 WL 389101 (D.C. Cir. June 30, 1998)). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008).

It is impossible in the present case for the Court to look to the "totality of the circumstances," however, because Plaintiff's brief, quite surprisingly, does not point to any record evidence to support the allegations in her Complaint. The best she can offer is to incorporate two documents by reference that could theoretically support her claims. Those documents, however, turn out to be unhelpful. First, Plaintiff "accepts the Defense statement of the factual background." See Pl. Opp. at 4. That statement – presumably the factual background section of Defendant's renewed Motion for Summary Judgment – however, alludes only obliquely to certain facts related to Plaintiff's claims (without record citations), and those references are simply not enough to allow the Court to accurately assess those claims. Second, Plaintiff "adds through incorporation by reference herein each of the allegations of Plaintiff's

11

Amended Complaint and the allegations of Plaintiff's 2004 EEO complaint." Id. That Amended Complaint contains allegations, not record evidence that can serve as the factual basis for Plaintiff's argument. See Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record."). The 2004 EEO complaint, conversely, is not even before the Court. Plaintiff did not enter the complaint into the record, she has not provided the Court with a copy, and she has made no representation that the document even contains sworn testimony, as opposed to mere allegations like the Amended Complaint in this suit. In these circumstances, Plaintiff has offered nothing to create a material dispute of fact on her hostile-work-environment count. See Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials.").

Even if Plaintiff had made reference to the record and established treatment that rose to the level of a hostile work environment, her claim would fail for want of a causal nexus between her protected status or activity and the alleged mistreatment. Title VII does not ban all workplace hostility. Instead, it makes employers liable only when hostility is directed at a protected class or those engaging in protected activities:

> Everyone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

Bryant v. Brownlee, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002)). Put another way, "the plaintiff must establish a causal connection between the harassment and her protected activity [or status] to succeed on the claim." Lewis v. District of Columbia, 653 F. Supp. 2d 64, 81 (D.D.C. 2009). "There is an evidentiary component to this principle: evidence that bears no connection to the plaintiff's protected status cannot

12

support a hostile work environment claim. Therefore, courts should exclude from consideration employment actions that 'lack a linkage' to discrimination or retaliation." Mason v. Geithner, 811 F. Supp. 2d 128, 179 (D.D.C. 2011) (internal citations omitted).

One's subjective belief alone is insufficient to establish a genuine issue of material fact as to whether discrimination motivated an employer's action. See Betkerur v. Aultman Hosp. Ass'n, 78 F.3d 1079, 1094 (6th Cir. 1996); cf. Fed. R. Civ. P. 56(e); Celotex Corp., 477 U.S. at 324 (nonmoving party's opposition must consist of more than mere unsupported allegations). Despite her protestations, Plaintiff has produced no other evidence that the Agency was motivated to treat her poorly in retaliation for her protected activity.

Based on the evidence proffered – or, more precisely, the lack thereof – and drawing all reasonable inferences in favor of Plaintiff, the Court finds that she has failed to raise a genuine dispute of fact regarding a hostile work environment. In these circumstances, the Court must grant Defendant's Motion with respect to Count II as well.

**IV.    Conclusion**

For the aforementioned reasons, the Court will grant Defendant's Motion for Summary Judgment on both remaining Counts. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  September 23, 2013